Slip Op. 17-64

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE CO., | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

Before: Richard K. Eaton, Judge

Court No. 12-00064

## <u>OPINION</u>

[Plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.]

Dated:  May 30, 2017

*Taylor Pillsbury*, Meeks, Sheppard, Leo & Pillsbury, of Newport Beach, CA, for the plaintiff. With him on the brief was *Michael B. Jackson, Jr.*

*Amy M. Rubin*, Assistant Director, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC. Of Counsel on the brief was *Chi S. Choy*, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, NY.

Eaton, Judge: Before the court is plaintiff International Fidelity Insurance Company's

("plaintiff" or "International Fidelity") motion for summary judgment challenging United States

Customs and Border Protection's ("Customs") decision to extend the liquidation period for four

entries of textiles imported by Family Warehouse, Inc. ("Family Warehouse").[1] *See* Pl.'s Mem.

Supp. Mot. Summ. J., ECF No. 24 ("Pl.'s Br."); Pl.'s Mem. Resp. Opp'n Def.'s Cross-Mot. Summ.

J. ("Pl.'s Resp. Br."). Specifically, International Fidelity argues that Customs unlawfully extended

the liquidation period for the entries by "unreasonably delay[ing] its investigation" by "long

periods of inaction . . . before [it] acted or requested further information." *See* Pl.'s Br. 13.

Because, plaintiff insists, the extensions were unreasonable, the entries should be found to have

been deemed liquidated under 19 U.S.C. § 1504(d) (2006).[2] Pl.'s Br. 1, 9.

The United States ("defendant" or "the Government"), on behalf of Customs, cross-moves

for summary judgment, claiming that the entries were not deemed liquidated and asserting that

Customs' liquidation extensions did not abuse the agency's discretion, in light of Customs'

responsibility to make accurate verifications of North American Free Trade Agreement

("NAFTA") claims. *See* Def.'s Mem. Supp. Cross-Mot. Summ. J., ECF No. 33 ("Def.'s Br.") 8;

Def.'s Reply Pl.'s Resp., ECF No. 38 ("Def.'s Reply Br.").

The court has jurisdiction under 28 U.S.C. § 1581(a) (2012), which provides that "[t]he

Court of International Trade shall have exclusive jurisdiction of any civil action commenced to

contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]."

Because plaintiff points to no record evidence demonstrating that Customs abused its

discretion by extending any period for liquidation, and Customs has cited to record evidence

---

[1]     The entries consisted of two entries of poketin bleached woven fabric (entry numbers 726-1307217-1 and 726-1307218-9) and two entries of poplin unbleached woven fabric (entry numbers 726-1307052-2 and 726-1307053-0).

[2]     Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition, and any applicable supplements.

showing that the extensions were within its discretion, plaintiff's motion for summary judgment

is denied, and defendant's cross-motion for summary judgment is granted.


## BACKGROUND

The facts described below have been taken from the parties' statements of undisputed

material facts. *See* Pl.'s Revised USCIT R. 56.3(a) Statement of Undisputed Material Facts Supp.

Mot. Summ. J., ECF No. 35-1 ("Pl.'s Statement"); Def.'s USCIT R. 56.3(a) Statement of

Undisputed Material Facts Supp. Cross-Mot. Summ. J., ECF No. 33 ("Def.'s Statement"); Def.'s

Resp. Pl.'s Statement, ECF No. 38-1 ("Def.'s Resp. Statement").[3] Citation to the record is provided

where a fact, although not admitted in the parties' papers, is uncontroverted by record evidence.

---

[3]       In its papers, defendant claims that plaintiff's initial brief did not comply with
USCIT Rule 56.3(a), which now provides:

> On any motion for summary judgment filed pursuant to Rule 56, the factual
> positions described in Rule 56(c)(1)(A) must be annexed to the motion in a
> separate, short and concise statement, in numbered paragraphs, of the material facts
> as to which the moving party contends there is no genuine issue to be tried. Failure
> to submit this statement may constitute grounds for denial of the motion.

USCIT R. 56.3(a). Defendant argues that plaintiff's motion was not in compliance because it not
only included "argument and/or editorial characterizations of asserted facts," but made no attempt
to provide evidentiary citations for some of its factual assertions and failed to identify any material
facts for which there is no genuine issue to be tried. *See* Def.'s Br. 1-2. Defendant also notes that
in plaintiff's reply brief, plaintiff failed to comply with 56.3(b), which requires a party opposing
such motion to respond to the moving party's 56.3(a) submission with "correspondingly numbered
paragraphs responding to the numbered paragraphs in the statement of the movant . . . ." USCIT
R. 56.3(b).

Plaintiff answers by noting that USCIT R. 56.3(a) was not in effect until July 1, 2015, a
date after plaintiff's June 15, 2015 motion was filed. Pl.'s Resp. Br. 2. Defendant responds,
however, that because of the close proximity to the change in the rule and the court's
announcement of the rule, plaintiff was on notice of the need to comply. Def.'s Reply Br. 1.
Because plaintiff (1) was in compliance with the rule at the time it submitted its papers; (2)
submitted a revised rule 56.3(a) statement of facts compliant with the amendment; and (3)

Plaintiff served as the surety for the duties owed on entries made by U.S. importer Family

Warehouse of poketin bleached woven fabric and poplin unbleached woven fabric.[4] Between July

30, 2007, and January 7, 2008, Family Warehouse imported thirty-three entries of various fabrics

through the Port of Laredo, Texas, claiming, on its entry summaries, that the goods qualified for

duty-free treatment under NAFTA as "originating goods" from Mexico.[5] Decl. of John L. Amaya

(Nov. 12, 2015) ¶ 6, ECF No. 33-1 ("Amaya Decl."); Def.'s Statement ¶ 5. Of the thirty-three total

entries made by Family Warehouse, four are at issue in this action: two entries of poketin bleached

woven fabric (entry numbers 726-1307217-1 and 726-1307218-9 (together, "the Poketin

Entries")), which entered the United States on July 31, 2007, and two entries of poplin unbleached

woven fabric (entry numbers 726-1307052-2 and 726-1307053-0 (together, "the Poplin Entries")),

---

defendant has not demonstrated any prejudice, the court looked to Pl.'s Statement and Def.'s
Statement for factual information.

[4]        The subject merchandise in dispute is "poketin bleached woven fabric (90 percent
polyester/10 percent cotton) imported in Entry Nos. 726-1307217-1 and 726-1307218-9" as well
as "unbleached poplin woven fabric (100 percent cotton) imported in Entry Nos. 726-1307052-2
and 726-1307053-0." Decl. of John L. Amaya (Nov. 12, 2015) ¶ 9, ECF No. 33-1.

[5]        Provisions of NAFTA were enacted into law on December 8, 1993, through the
North American Free Trade Agreement Implementation Act, codified in 19 U.S.C. § 3312, for the
purpose of further promoting the free flow of goods between the United States, Canada, and
Mexico. *See Corrpro Companies, Inc. v. United States*, 433 F.3d 1360, 1362 (Fed. Cir. 2006). To
accomplish this goal, the agreement provides for the elimination of most tariffs collected on goods
traded between the three countries. *Id.* Preferential tariff treatment, however, is not automatic, and
an importer must make a written declaration that the goods qualify for NAFTA treatment based
on a "complete and properly executed original Certificate of Origin . . . ." 19 C.F.R. § 181.21(a)
(2007). To substantiate the written declaration, Customs may initiate a verification process to
determine whether a good is entitled to preferential tariff treatment based on its country of origin.
19 C.F.R. § 181.72. Following completion of the verification process, Customs will issue a written
determination to the exporter or producer making the NAFTA claim. 19 C.F.R. § 181.75(a).

        Pursuant to 19 C.F.R. § 181.72, Customs may initiate the verification procedure by issuing
a questionnaire or verification letter requesting information from the exporter or producer. 19
C.F.R. § 181.72(a)(3). The response—or lack of response—to these verification letters provides
Customs with a basis for making a proper determination on whether NAFTA treatment is
appropriate.

which entered the United States on July 30, 2007. Def.'s Statement ¶ 2; Pl.'s Br., Ex. A-D. Plaintiff

secured the duties owed on these entries by issuing four single transaction bonds to the importer,[6]

as principal, for amounts nearly equal to the value entered for each entry. *See* Compl. ¶¶ 7, 8, 19.

On February 2, 2008, shortly after the importation of the last of Family Warehouse's thirty-

three entries of fabric claiming duty-free treatment, Customs issued its first notice of extension,

thereby giving it an additional year from the final date of the initial liquidation period to verify the

country of origin and ultimately liquidate the subject entries.[7] *See* Def.'s Resp. Pl.'s Req. Admis.

No. 9; 19 U.S.C. § 1504(b)(1); 19 C.F.R. § 159.12(a). Thus, the first notice of extension gave

Customs until July 31, 2009, to liquidate the Poketin Entries and until July 30, 2009, to liquidate

the Poplin Entries.[8] On April 11, 2009, Customs issued its second notice of extension for the

Poketin Entries, giving it until July 31, 2010, to liquidate those entries. On July 25, 2009, Customs

issued its second notice of extension for the Poplin Entries, giving it until July 30, 2010, to liquidate

---

[6]     Customs was the beneficiary of the bonds. *See generally* 19 C.F.R. § 113.62; *see also Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 34 CIT 294, 314, 700 F. Supp. 2d 1330, 1348 (2010), *aff'd in relevant part*, 672 F.3d 1041 (Fed. Cir. 2012) ("The principal and surety are jointly liable to Customs . . . in the event of default of the obligation to deposit estimated duties." (citing 19 C.F.R. § 113.62(*l*)(4) (2009)); *Questions and Answers on CBP Bonds*, U.S. CUSTOMS AND BORDER PROTECTION, https://www.cbp.gov/sites/default/files/documents/q_and_a_bonds_3.doc *available at* https://www.cbp.gov/document/faqs/questions-and-answers-cbp-bonds (last visited this date); Mark K. Neville, Jr., INTERNATIONAL TRADE LAWS OF THE UNITED STATES, ch. 9, ¶ 9.06[3] (2015) ("The principal [under a customs bond] is the party who takes out the bond (e.g., the importer of record). The surety is typically the insurance company that underwrites the debt. Finally, CBP is the third-party beneficiary of the principal/surety contract.").

[7]     Under 19 U.S.C. § 1504(a), Customs initially had one year from the date of entry to liquidate the subject merchandise. Thus, without lawful extensions, the last day to liquidate the Poketin Entries would have been July 31, 2008, and the last day to liquidate the Poplin Entries would have been July 30, 2008.

[8]     Because 19 C.F.R. § 159.12(a) allows Customs to extend the period by one-year increments, the new liquidation dates fell on the second anniversary of the subject merchandise's entry into the United States.

those entries.[9] *See* Def.'s Resp. Pl.'s Req. Admis. No. 9. The reason given for making these

extensions was that Customs needed more time to both "obtain information" and "await[]

delinquent responses to its requests for information."[10] Def.'s Resp. Pl.'s Req. Admis. Nos. 8, 14,

15. The Poplin Entries and one of the Poketin Entries (entry number 726-1307217-1) were

liquidated on June 18, 2010. One of the Poketin Entries (entry number 726-1307218-9) was

liquidated on July 16, 2010. Thus, all four entries were liquidated prior to the expiration of the

second extension period. *See* Def.'s Resp. Pl.'s Req. Admis. No. 9; Compl. ¶ 28. For clarity, the

details of the proceedings are discussed separately based on each entry's fabric.


## I.    THE POKETIN ENTRIES

The Poketin Entries entered the United States on July 31, 2007. As will be discussed

hereafter, Customs did not immediately take action on the entries, but waited until all thirty-three

Family Warehouse entries were made.[11] Thereafter, Customs sent a verification letter to Textiles

---

[9]        These dates represent the third anniversary of the subject merchandise's entry into
the United States.

[10]       Under 19 C.F.R. § 159.12(a)(i), "[t]he port director may extend the 1–year statutory
period for liquidation for an additional period not to exceed 1 year if . . . [i]nformation needed by
Customs for the proper appraisement or classification of the merchandise is not available . . . ."

[11]       Between January 2008 and September 2008, Customs initiated eight NAFTA
verification procedures for the Family Warehouse entries. Amaya Decl. ¶ 10. While the specifics
of these initial verification procedures is absent from the record, Senior Import Specialist Amaya's
testimony explains that a verification procedure for poketin bleached woven fabric was one of
these initial investigations. *See* Amaya Decl. ¶¶ 10-12 ("A majority of the NAFTA claims involved
in the 33 Family Warehouse entries were covered by eight NAFTA verifications initiated between
January 2008 and September 2008 which covered different fabrics claimed to have been produced
by different manufacturers . . . . For example, . . . [a] NAFTA verification was . . . initiated on
October 7, 2008 for poketin bleached woven fabric . . . . There was an earlier NAFTA verification
covering the same fabric claimed to have been produced by Textiles Raamsa. However, it was
discovered that several entries . . . involved a different claimed producer . . . .").

Raamsa S.A. de C.V. ("Textiles Raamsa") seeking to confirm the poketin fabric's country of

origin. Textiles Raamsa was the company claimed on some of Family Warehouse's entry papers

to be the Mexican producer of that fabric. *See* Amaya Decl. ¶¶ 10-12. On February 2, 2008, as

Customs' initial investigations were still underway, it extended the liquidation period for the first

time. The parties agree that the reason Customs extended the time for liquidation was to "await[]

delinquent responses to its requests for information." Pl.'s Statement ¶ 11. It was subsequently

"discovered," however, "that several entries of poketin bleached woven fabric . . . , including [the

entries at issue,] involved a different claimed producer, Textycom S.A. de C.V." ("Textycom").

Amaya Decl. ¶ 12. How the "discovery" was made is unclear. Nonetheless, on October 7, 2008,

Customs sent a CBP Form 28 Request for Information ("Request for Information") to Family

Warehouse's Mexican exporter Exportadora Deisy, S.A. de C.V. ("Exportadora Deisy") in an

effort to determine the origin of the entries and to request further information regarding the entries'

producer. Amaya Decl. ¶ 12; Pl.'s Br., Ex. C, CBP Form 28 Request for Information, Oct. 7, 2008,

ECF No. 24-1 ("Oct. 7, 2008 Request for Information"). The Request for Information was

prompted by the lack of clarity in Family Warehouse and Exportadora Deisy's entry papers

concerning the fabric's country of origin:

> [I]nvoices [of the Poketin Entries] shows [Textycom], [Exportadora Deisy's]
> NAFTA Certificate of Origin provided with the entry summary shows [Exportadora
> Deisy] as exporter but not as producer in block 8. If [Textycom] is not the producer
> of the fabric of [the Poketin Entries], then notify this office as to which firm is the
> actual producer of the fabrics. What is the complete name and office title of the
> individual with [Textycom] or the actual producer of the fabrics who can certify as
> to the accuracy of the information provided to your firm for your NAFTA
> Certificate of Origin? What is the complete fax number of [Textycom] or the actual
> producer of the fabrics?

Oct. 7, 2008 Request for Information. The record contains nothing indicating that the

October 7, 2008 Request for Information received a response.

On December 1, 2008, Customs sent a Request for Information to producer Textycom regarding the fabric's origin. Pl.'s Br., Ex. C, CBP Form 28 Request for Information, Dec. 1, 2008, ECF No. 24-1 ("Dec. 1, 2008 Request for Information"). Textycom, however, failed to provide any information. Pl.'s Br., Ex. C, CBP Form 29 Notice of Action, Sept. 23, 2009, ECF 24-1 ("Sept. 23, 2009 Notice of Action").

Having received no response regarding origin information, on December 31, 2008, Customs sent a CBP Form 29 Notice of Action ("Notice of Action") to inform the exporter, Exportadora Deisy, of Customs' intent to deny duty-free treatment. A Notice of Action serves as notice that a negative determination is being proposed, yet provides an additional opportunity for an exporter or producer to submit information before being denied duty-free treatment. Amaya Decl. ¶ 18. Specifically, the Notice of Action informed Exportadora Deisy that "[i]f the requested [origin] information is not supplied within 30 days . . . preferential tariff treatment will be denied without further notification . . . ." Pl.'s Br., Ex. C, CBP Form 29 Notice of Action, Dec. 31, 2008, ECF No. 24-1 ("Dec. 31, 2008 Notice of Action"). Exportadora Deisy, however, did not respond to the notice. *See* Sept. 23, 2009 Notice of Action. As a result, on February 2, 2009, Customs sent the company a second Notice of Action informing Exportadora Deisy that "verification revealed the good does not qualify for preferential tariff treatment" because "the producer . . . named did not provide [Customs with] the requested corroborating evidence that they manufactured the fabric in Mexico under NAFTA," and the goods were denied duty-free treatment following thirty days with no response from Exportadora Deisy. Pl.'s Br., Ex. C, CBP Form 29 Notice of Action, Feb. 2, 2009, ECF No. 24-1 ("Feb. 2, 2009 Notice of Action"); Def.'s Resp. Pl.'s Req. Admis. No. 12. Shortly thereafter, on April 11, 2009, Customs extended the liquidation period for a second time,

pushing the liquidation date back from July 31, 2009, to July 31, 2010. *See* Def.'s Resp. Pl.'s Req. Admis. No. 9; 19 C.F.R. § 159.12(a).

Because duty free treatment had not been shown, Customs, as was its practice, next examined the importer's proposed classification of the fabric under the Harmonized Tariff Schedule of the United States ("HTSUS"). Amaya Decl. ¶¶ 22-23. Customs orders its inquiries in this way since, if duty-free NAFTA treatment is shown, classification normally will not matter. Amaya Decl. ¶ 26. On Family Warehouse's entry summaries, the Poketin Entries were classified under HTSUS subheading 5512.11.0090, which covers "unbleached or bleached woven fabrics of synthetic staple fibers, containing 85 percent or more by weight of polyester staple fibers." Amaya Decl. ¶ 24. Customs' review of the relevant invoice descriptions, however, did not indicate classification under this subheading because "[t]he commercial invoice descriptions for the fabric . . . did not confirm that the fabric was made of staple fibers." Amaya Decl. ¶ 24. To determine the proper classification, Customs sent a Request for Information to importer Family Warehouse on June 17, 2009, asking for additional information regarding the fabric. Amaya Decl. ¶ 25; *see also* Sept. 23, 2009 Notice of Action ("The importer . . . did not respond to this office's Request for Information . . . sent June 17, 2009 for the required additional invoice information for the fabric.").

On September 23, 2009, having received no response to its inquiry seeking information for use in properly classifying the fabric, Customs sent a Notice of Action to Family Warehouse advising it that the entries were being denied duty-free treatment and that the classification would be changed to HTSUS subheading 5407.51.0040, which covers woven fabrics of synthetic filament yarn, with a duty rate of 14.9 percent. Sept. 23, 2009 Notice of Action. The Poketin Entries were then liquidated on June 18, 2010, and July 16, 2010, and Family Warehouse was billed

accordingly. After sixty days without payment from the importer, formal demands were made on International Fidelity as Family Warehouse's surety.

## II.  THE POPLIN ENTRIES

The Poplin Entries were made on July 30, 2007. Between January 2008 and September 2008, Customs initiated its first eight NAFTA verification procedures for the thirty-three Family Warehouse entries claiming NAFTA treatment. Amaya Decl. ¶ 10. Following the initiation of the original NAFTA verifications, Customs determined that other information was necessary and initiated additional NAFTA verifications regarding the poketin bleached woven fabric produced by Textycom discussed above as well as for the other fabrics found in the thirty-three entries. Amaya Decl. ¶¶ 10-12. That is, because of the number of NAFTA verifications needed for the Family Warehouse entries, Customs determined that "it was more practical to allow for the conclusion of all the NAFTA verifications" before making final determinations for each individual entry. Amaya Decl. ¶ 14. Therefore, because there were multiple entries of the same fabric entered by Family Warehouse with the same claimed manufacturer, Customs decided to seek country of origin information about them at the same time. *See* Amaya Decl. ¶¶ 8-10.

On February 2, 2008, Customs issued its first notice of extension for all four of the entries involved in this action. In June 2009, after a majority of its country of origin investigations closed, Customs conducted a reexamination of the importer's entries. Amaya Decl. ¶ 15. According to Customs, because a final NAFTA determination may affect the tariff treatment of multiple entries involving the same manufacturer, importer, and fabric, at the closing of a NAFTA verification, Customs generally reexamines all relevant entries to make sure each will receive the appropriate treatment under NAFTA. Amaya Decl. ¶ 14 ("[A]t the closing of a NAFTA verification, the

relevant entries are examined again to identify all applicable entries."). Thus, once Customs has

finished all NAFTA verification proceedings for a particular entry—*i.e.*, a "reporting" entry—it

will coordinate its findings with other entries involving the same HTSUS classification that were

imported during a "blanket" period (in this case, between January 1, 2007 and December 31, 2007).

*See* Amaya Decl. ¶¶ 8-10; Pl.'s Br., Ex. B, CBP Form 28 Request for Information, June 18, 2009,

ECF No. 24-1 ("June 18, 2009 Request for Information").

In June 2009, Customs reexamined the Family Warehouse entries in order to confirm that

all similar entries were accorded the same NAFTA treatment. During this reexamination—owing

either to an error on the entry papers or to Customs' own clerical error[12]—Customs found that no

NAFTA verification had been initiated for the Poplin Entries and two other entries of unbleached

poplin woven fabric which the entry papers indicated were produced by Textiles Raamsa.

Therefore, on June 18, 2009, Customs sent a Request for Information to Textiles Raamsa. Amaya

Decl. ¶ 15; June 18, 2009 Request for Information.

On July 21, 2009, after failing to receive origin information from producer Textiles

Raamsa, Customs sent a Notice of Action to Exportadora Deisy advising it that duty-free treatment

would be denied if information concerning the origin of the goods was not supplied within thirty

days. Pl.'s Br., Ex. B, CBP Form 29 Notice of Action, July 21, 2009, ECF No. 24-1 ("July 21,

2009 Notice of Action"). Shortly thereafter, on July 25, 2009, Customs issued its second notice of

extension for the Poplin Entries, making the new liquidation date July 30, 2010. *See* Def.'s Resp.

Pl.'s Req. Admis. No. 9; 19 C.F.R. § 159.12(a). On September 21, 2009, Exportadora Deisy

provided "additional information by fax to [Customs]," however, Customs replied that the

---

[12]     Neither International Fidelity nor the Government identifies who was responsible
for the clerical error.

information sent "did not support the producer's claim concerning the origin of the good." Pl.'s

Br., Ex. B, CBP Form 28 Notice of Action, Oct. 20, 2009, ECF No. 24-1 ("Oct. 20, 2009 Notice

of Action"). Therefore, on October 20, 2009, because neither Textiles Raamsa nor Exportadora

Deisy "provide[d] . . . the requested corroborating evidence that [the producer] manufactured the

fabric in Mexico under NAFTA," Customs sent a second Notice of Action to Exportadora Deisy

informing it that duty-free treatment for the Poplin Entries would be denied without further notice

if Exportadora Deisy did not supply the requested information. *See* Oct. 20, 2009 Notice of Action.

Exportadora Deisy, however, did not subsequently supply any origin information. *See* Pl.'s Br.,

Ex. B., CBP Form 29 Notice of Action, May 25, 2010, ECF No. 24-1 ("May 25, 2010 Notice of

Action").

Following the denial of duty-free treatment on October 20, 2009, Customs investigated

whether the tariff classification, declared on the Poplin Entries' entry summaries, matched the

invoice description or the tariff subheading identified on the Certificate of Origin. *See* Amaya

Decl. ¶¶ 22-23. On May 25, 2010, after its investigation resulted in no classification change,

Customs sent an additional Notice of Action to importer Family Warehouse, informing it again of

the denial of duty-free treatment and the resulting 10.5 percent duty rate. *See* May 25, 2010 Notice

of Action. In June 2010, Customs liquidated the Poplin Entries and billed Family Warehouse. As

with the Poketin Entries, after sixty days without payment from the importer, formal demands

were made on International Fidelity as Family Warehouse's surety.

## III.   THE PROTEST

Pursuant to 19 U.S.C. § 1514, on March 2, 2011, International Fidelity filed a protest[13] covering the four entries at issue. In the protest, International Fidelity argued, among other things, that "the liquidation of the entries occurred by operation of law under 19 U.S.C. § 1504." Compl. ¶ 33. In other words, the surety claimed that the four entries should be liquidated at the rate "asserted by the importer of record" at the time of entry. 19 U.S.C. § 1504(b). In this case, because NAFTA treatment was claimed on the entry documents, that rate would be zero. The protest was denied on September 15, 2011. Compl. ¶ 34. Plaintiff then commenced this action on March 13, 2012. Plaintiff later filed its motion for summary judgment claiming that the entries should be deemed liquidated at the duty-free rate asserted at the time of entry pursuant to 19 U.S.C. § 1504(d).[14] Pl.'s Br. 9. On November 16, 2015, following the close of discovery, defendant cross-moved for summary judgment. Def.'s Br. 1.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "When both parties move for

---

[13]      Protest number 2304-11-100023.

[14]      The court notes that while plaintiff's brief refers to 19 U.S.C. § 1504(d), the substance of its argument is that the entries should be found to have been deemed liquidated under 19 U.S.C. § 1504(a). Section 1504(d) governs the deemed liquidation of entries whose liquidation was previously suspended. *See* 19 U.S.C. § 1504(d). Section 1504(a), on the other hand, governs the deemed liquidation of entries not liquidated within one year from the date of entry. *See* 19 U.S.C. § 1504(a). As shall be seen, because neither party argues that the liquidation of plaintiff's entries had been suspended, the court views the question of deemed liquidation as falling under 19 U.S.C. § 1504(a).

summary judgment, the court must evaluate each motion on its own merits, resolving all

reasonable inferences against the party whose motion is under consideration." *JVC Co. of Am. v.

United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000). Here, because there are no genuine issues as

to any material facts, summary judgment is appropriate.

This Court reviews the validity of Customs' liquidation extensions to determine whether

they are "proper under the statute, and [are] not arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." *Int'l Cargo & Sur. Ins. Co. v. United States*, 15 CIT 541,

542, 779 F. Supp. 174, 176 (1991); *see* 5 U.S.C. § 706(2)(A) (2012); *Fabil Mfg. Co. v. United

States,* 237 F.3d 1335, 1340 (Fed. Cir. 2001).


# DISCUSSION

## I.   LEGAL CONSIDERATIONS

Liquidation refers to "the final computation or ascertainment of the duties . . . on an entry."

19 C.F.R. § 159.1. If an entry of merchandise is not actually liquidated within one year from its

date of entry, however, it is "deemed liquidated" by operation of law at the duty rate asserted by

the importer upon entry.[15] 19 U.S.C. § 1504(a)(1); *see Chemsol, LLC v. United States*, 755 F.3d

---

[15]     Title 19 U.S.C § 1504(a)(1) provides:

Unless an entry of merchandise for consumption is extended under subsection (b)
of this section or suspended as required by statute or court order, except as provided
in section 1675(a)(3) of this title, an entry of merchandise for consumption not
liquidated within 1 year from—

(A) the date of entry of such merchandise, . . .

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties
asserted by the importer of record. Notwithstanding section 1500(e) of this title,
notice of liquidation need not be given of an entry deemed liquidated.

1345, 1349 (Fed. Cir. 2014). Customs may extend the time in which it must liquidate for an additional one-year period if information is needed for the "proper appraisement or classification" of the merchandise. 19 U.S.C. § 1504(b)(1). For extensions to be lawful, Customs must give appropriate notice to both the importer of record and its surety, as well as articulate a statutory reason for the extension.[16] *See* 19 U.S.C. § 1504(b); *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 767 (Fed. Cir. 1993). Additionally, Customs may not extend the liquidation period more than three times (*i.e.*, three years) per entry. *See* 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12(e); *Chemsol*, 755 F.3d at 1349.

Thus, at most, Customs has four years to obtain information for appraisement or classification, provided any time extension granted is "for a reasonable period of time relative to the situation." *Detroit Zoological Soc. v. United States*, 10 CIT 133, 138, 630 F. Supp. 1350, 1357 (1986); *see St. Paul*, 6 F.3d at 769-70. Also, Customs may not extend the time for liquidation unless it has reason to believe that information useful to properly appraising or classifying the goods will result. *See* 19 U.S.C. § 1504(b)(1); *see also Detroit Zoological*, 10 CIT at 138, 630 F. Supp. at 1356 ("The term 'information,' as it is used in the statute, 19 U.S.C. § 1504(b)(1) (1982), however, should be construed to include whatever is reasonably necessary for proper appraisement or classification of the merchandise involved.").

While Customs is entitled to deference and a presumption of correctness in the collection of duties and in its official acts, *see* 19 U.S.C. § 3; 28 U.S.C. § 2639(a)(1) (2012), the court is

---

[16]     The court notes that International Fidelity's complaint alleges in Count 2 that "[i]f the liquidation period was extended by Customs for [the four entries], the extension was invalid due to Customs['] failure to provide written notice of extension to the surety." *See* Compl. ¶ 43. In its papers, however, International Fidelity makes no argument regarding lack of notice. This claim is thus waived. Indeed, the only issue discussed in plaintiff's papers is "[w]hether the entries involved in this case were deemed liquidated by operation of law due to Customs' unreasonable delay in conducting its NAFTA investigation." Pl.'s Br. 1.

mindful that the deemed liquidation provisions in 19 U.S.C. § 1504(b) serve the important purpose

of "'increas[ing] certainty in the customs process for importers, surety companies, and other third

parties with a potential liability relating to a customs transaction.'" *St. Paul*, 6 F.3d at 767 (quoting

S. Rep. No. 95-778, at 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2243).

The courts have, therefore, provided for a "narrow limitation" on Customs' discretion to

extend liquidation:

> We thus conclude that Customs may, for statutory purposes and with the requisite
> notice, employ up to four years to effect liquidation so long as the extensions it
> grants are not abusive of its discretionary authority. Such an abuse of discretionary
> authority may arise only when an extension is granted even *following elimination
> of all possible grounds for such an extension*. There is, in sum, a narrow limitation
> on Customs' discretion to extend the period of liquidation.

*St. Paul*, 6 F.3d at 768 (emphasis added); *Ford Motor Co. v. United States*, 286 F.3d 1335, 1344

(Fed. Cir. 2002) ("*Ford IV*"). Thus, the limitation is sufficiently narrow that a court may only find

an abuse of discretion when Customs has granted an extension where "all reasonable bases" for

making a decision to extend the liquidation period have been eliminated. For example, where

Customs has actual knowledge that there is no basis for an extension, then Customs may not grant

an extension. *St. Paul*, 6 F.3d at 768 ("Extending a period of liquidation with actual knowledge

that no basis exists for so doing would be an abuse of Customs' discretion."); *Intercargo Ins. Co.

v. United States*, 83 F.3d 391, 393 (Fed. Cir. 1996); *Stemcor USA Inc. v. United States*, 26 CIT

1373, 1379, Slip. Op. 02-149 at 6 (Dec. 17, 2002). Based on the case law, however, it is apparent

that the limitation on Customs' discretion is very narrow indeed.

The review of this protest, as with all protests, is conducted based on the record developed

before this Court. 28 U.S.C. § 2640(a) (2012). In this case, the examination of that record involves

looking at the facts with which Customs was presented when it issued each liquidation extension,

in order to determine whether these decisions were reasonable at the time they were made. *See*

*Ford Motor Co. v. U.S.*, 157 F.3d 849, 855 (Fed. Cir. 1998) ("*Ford II*"); *Ford IV*, 286 F.3d at 1343.

In other words, facts that developed subsequent to each notice of extension cannot be used to judge

whether or not each extension was reasonable at the time that the notice of extension was issued.

The burden of demonstrating that Customs acted unlawfully in extending the liquidation

period falls on plaintiff, who must satisfy this burden by a preponderance of the evidence. *See St.*

*Paul*, 6 F.3d at 769 ("[W]e conclude . . . that [28 U.S.C. § 2639(a)(1)] requires [plaintiff] to

overcome the presumption of correctness accorded to Customs' decisions to extend by a

preponderance of the evidence."); *Ford IV*, 286 F.3d at 1340.

## II. CUSTOMS DETERMINATIONS TO MAKE LIQUIDATION EXTENSIONS WERE NOT AN ABUSE OF DISCRETION

International Fidelity argues that "long periods of inaction" rendered Customs' liquidation

extensions unreasonable. Pl.'s Br. 13; Pl.'s Resp. Br. 11 ("For all four (4) entries, Plaintiff has met

or exceeded the burden of proof . . . [by] showing significant time periods in which the agency

took *no action* regarding its investigation." (emphasis added)). In particular, plaintiff contends that

it has documented a nearly twenty-three month period of claimed inactivity for the Poketin Entries

(between their entry on July 31, 2007, the issuance of the first Request for Information on October

7, 2008, the first Request for Information regarding classification on June 17, 2009, and liquidation

on June 18 and July 16, 2010) and a thirty-month period of claimed inactivity for the Poplin Entries

(between entry on July 30, 2007, the issuance of the first Request for Information on June 18,

2009, the issuance of a negative NAFTA determination on October 20, 2009, a final determination

on May 25, 2010, and liquidation on June 18, 2010), which led to unreasonable and unnecessary

extensions. Pl.'s Resp. Br. 7-10. According to plaintiff, "the NAFTA investigation should have

been conducted quickly and diligently due to the temporary nature of many of the records used to

substantiate claims for NAFTA-originating treatment." Pl.'s Br. 14.[17]

The thrust of plaintiff's argument, then, is that once Customs had authority to take action,

it should have done so with greater dispatch. *See* Pl.'s Br. 14 ("Customs had it within its power to

issue [] Notices of Action promptly following the expiration of the [Request for Information]

response deadline, but it neglected to do so. Customs should not have delayed issuing [Requests

for Information], nor have waited almost a year before issuing . . . Notices of Action.").

Plaintiff endeavors to draw support for its position from *Ford Motor Co. v. United States*.

In *Ford*, the Federal Circuit held that Customs improperly extended the liquidation period under

19 U.S.C. § 1504(b) because "Customs' delay in pursuing the fraud investigation and its resulting

delay in liquidating the entries were not reasonable." *Ford IV*, 286 F.3d at 1341.

The Government maintains that "[g]iven the role of and the discretion afforded to Customs

to verify claims and collect duties, the Court should defer to the agency regarding both the

methodology employed and the time involved to resolve the NAFTA claims . . . ." Def.'s Br. 9.

For defendant, plaintiff presents no evidence that Customs "did nothing to further the verification

of the NAFTA claims," nor does it refute the statements of Senior Import Specialist Amaya

regarding Customs' customary NAFTA verification procedures. Def.'s Br. 5. Therefore, defendant

contends that, because plaintiff has cited no record evidence showing what Customs was doing, or

not doing, during the time periods, it has not met its burden of proof. Moreover, the defendant

asserts that it has presented sworn testimony demonstrating that the length and the manner of

Customs' investigation was reasonable. Def.'s Br. 5.

---

[17]      Notably, plaintiff offers no proof, or even argument, that the required records in this case were particularly temporary in nature.

###### A.       First Extension

Plaintiff argues that the first notice of extension issued on February 2, 2008, was unreasonable because "[n]o action was taken by Customs with respect to all four (4) entries prior to [that time]." Pl.'s Resp. Br. 7.

The Government responds that Senior Import Specialist Amaya's sworn testimony demonstrates that the conduct of the investigation was reasonable and customary. *See* Def.'s Reply Br. 3 ("[In his testimony,] SIS Amaya provided an explanation not only of how NAFTA verifications are conducted in general but of how and why the NAFTA verifications for numerous entries by importer Family Warehouse were conducted as they were."). As for plaintiff's arguments, defendant insists that "[i]nstead of demonstrating any error in our legal analysis or providing any reason for the Court to disregard the testimony of SIS Amaya , [plaintiff] consumes the bulk of its response reiterating its belief that Customs' verification . . . took too long. [Plaintiff's] support for this belief consist primarily of . . . a recitation of time periods between select agency activities in bolded text to make them appear significant." Def.'s Reply Br. 4.

The court finds that the conduct of Customs' procedures through February 2, 2008 were reasonable and that Customs' decision to extend the liquidation period on that date so that it could continue its investigation and await information regarding the importer's NAFTA claims was lawful. *See Ford IV*, 286 F.3d at 1343; *see also Ford II*, 157 F.3d at 857; *Int'l Cargo*, 15 CIT at 546-47, 779 F. Supp. at 179.

Here, Family Warehouse made a formal declaration that the imported merchandise in all four of the entries secured by plaintiff were originating goods from Mexico by adding "MX" as a prefix to the HTSUS classification subheading on its entry summaries. Amaya Decl. ¶ 6; Pl.'s Br.,

Ex. A-D. These summaries were received by Customs on August 10, 2007 (for the Poketin Entries) and August 9, 2007 (for the Poplin Entries). Once the importer had made this claim for NAFTA treatment, Customs was charged with the duty to either accept this claimed country of origin or deny it. Customs, however, could deny preferential NAFTA tariff treatment "only after initiation of an origin verification under § 181.72(a) . . . which results in a determination that the imported good does not qualify as an originating good . . . ." 19 C.F.R. § 181.71. Therefore, Customs could not immediately liquidate the entries because it lacked information necessary to properly evaluate the entries' claimed NAFTA status. Thus, Customs sought information regarding the origin of the fabric.

As to Customs' verification process, the record evidence demonstrates, and sensible business practice directs, that rather than proceeding piecemeal, Customs cumulates several entries under one verification procedure when they share the same importer, producer, and tariff subheading. *See* Amaya Decl. ¶ 8 ("NAFTA verifications are not conducted on an entry-by-entry basis as doing so would be duplicative and inefficient. Instead, a NAFTA verification is issued based on the importer, the producer of the merchandise, and the tariff subheading under which the merchandise is classified. One NAFTA verification may be sufficient to cover several entries that involve the same importer and the same merchandise made by the same producer.").

Thus, although the Poketin Entries were made on July 31, 2007, and the Poplin Entries on July 30, 2007, the last of the Family Warehouse entries with which the various fabrics were combined was not made until January 2008. *See* Amaya Decl. ¶ 6. Accordingly, Customs did not send its first verification letter for the thirty-three entries until January 2008. Even at the start of its verification, however, it became clear to Customs (due to the quantity and variety of fabrics) that it would require more time to obtain "information needed for the proper appraisement or

classification of the imported . . . merchandise." 19 U.S.C. § 1504(b)(1); *see* Amaya Decl. ¶¶ 10-13. In other words, Customs issued its first notice of extension so that it would have time to obtain information necessary to properly address the NAFTA claims. *See* Amaya Decl. ¶¶ 10, 14 ("[E]ight NAFTA verifications [were] initiated between January 2008 and September 2008 . . . . Due to the variety of fabrics and the large number of entries, subsequent corrections and additions were required to the verifications. . . . In light of the multiple NAFTA verifications initiated for the Family Warehouse entries, it was more practical to allow for the conclusion of all the NAFTA verifications before making final NAFTA determinations for each individual Family Warehouse entry."). Therefore, knowing that it was embarking on a process involving numerous entries, on February 2, 2008, Customs decided to extend the liquidation period. *See* Amaya Decl. ¶¶ 10, 12; Def.'s Resp. Pl.'s Req. Admis. No. 9. Shortly thereafter, as discussed above, Customs initiated additional verification procedures, including, among others, the verification of poketin bleached woven fabric and razo bleached woven fabric. *See* Amaya Decl. ¶¶ 10-13.

As Senior Import Specialist Amaya's testimony specifies, "the NAFTA verification process is designed to give the exporter and/or producer as much time and opportunity as possible to provide information to substantiate the NAFTA claim." Amaya Decl. ¶ 21. This is because if an importation's NAFTA claim is verified, it generally receives duty-free treatment. *See* Amaya Decl. ¶ 26. Indeed, as defendant points out, "a verified claim . . . benefits the importer." Def.'s Reply Br. 7. Accordingly, the regulations regarding NAFTA verification allow "several opportunities [for the exporter or producer] to provide the requested information." Amaya Decl. ¶ 17; *see, e.g.*, 19 C.F.R. §§ 181.71-.76.

The court finds that because of the number of Family Warehouse entries constituting a variety of fabrics and Customs' knowledge of the manner and duration of its own procedure that

its decision, on February 2, 2008, to extend liquidation was reasonable. Family Warehouse made thirty-three entries of fabric claiming Mexico as their country of origin, thus seeking NAFTA treatment. Customs' reasonable practice was to cumulate entries and to send verification letters for the accumulated number of entries rather than for each entry. Customs, of course, had knowledge of the time it would ordinarily take to complete its verifications and that the time could be lengthy because the procedures provide "several opportunities" for a NAFTA claim to be supported. Amaya Decl. ¶ 17. Therefore, because the last of the thirty-three entries was made on January 7, 2008, and because Customs clearly needed time to complete its work, it was not an abuse of discretion for Customs, even at the early date of February 2, 2008, to extend the period in which to liquidate in order to make sure proper verification proceedings were commenced and completed.

### B.    Second Extension

*i.    The Length and Manner of Customs' Investigation Were Reasonable*

Following the February 2, 2008 extension, Customs discovered errors in some of the merchandise's entry papers. *See, e.g.,* Amaya Decl. ¶¶ 11-12 ("[Exportadora Deisy] advised on August 27, 2008, in response to the initial NAFTA verification, that due to a clerical error, the producer of the [razo bleached] fabric was not Vizuette, but Textiles Raamsa. . . . It was [also] discovered that several entries of poketin bleached woven fabric . . . involved a different claimed producer, [Textycom]."). Accordingly, on October 7, 2008, Customs issued three Requests for Information to determine who actually produced the affected entries. One of these requests, sent to Exportadora Deisy, involved the Poketin Entries at issue here. Amaya Decl. ¶¶ 12-13.

On December 1, 2008, Customs issued an additional Request for Information to Textycom, the Poketin Entries' producer, to determine the fabric's origin.[18] After receiving no response from Textycom, on December 31, 2008, Customs issued a Notice of Action to Exportadora Deisy, informing it of Customs' attempted verification. On February 2, 2008, having received no origin information from either Textycom or Exportadora Deisy, Customs sent a second Notice of Action to Exportadora Deisy, informing it that the fabric did not qualify for NAFTA treatment.

On April 4, 2009, nearly four months before the time period for liquidation would have run following the first notice of extension, Customs issued its second one-year extension for the Poketin Entries in order to "await[] delinquent responses to its request for information" and "obtain the information to determine how to properly classify the merchandise." Pl.'s Statement ¶ 11; Def.'s Resp. Pl.'s Req. Admis. No. 8. Pursuant to this extension, the Poketin Entries would have to be liquidated by July 31, 2010.

By June 2009, most of the verification procedures were drawing to a close, and Customs determined that, due to the variety of fabrics involved, it should, in accordance with its usual practice, reexamine all of the entries. Amaya Decl. ¶¶ 14-15. During this reexamination, it was learned that no verification procedure had been initiated for, among other entries, the Poplin Entries at issue here. Amaya Decl. ¶ 15. Accordingly, on June 18, 2009, Customs sent a Request for Information to producer Textiles Raamsa. Amaya Decl. ¶ 15. Because it received no response from the producer, on July 21, 2009, Customs issued a Notice of Action to Exportadora Deisy, informing it that Customs had attempted verification and that the producer failed to respond. July 21, 2009 Notice of Action. Accordingly, unless Exportadora Deisy or Textiles Raamsa provided

---

[18]     There appeared to be some confusion about the producer of the fabric because the invoices on Family Warehouse's entry summaries listed Textycom as producer, but the Certificate of Origin did not.

the requested origin information, Customs would deny NAFTA treatment. Shortly thereafter, on

July 25, 2009, while awaiting a response, Customs issued its second one-year liquidation

extension. *See* Def.'s Resp. Pl.'s Req. Admis. No. 9. Pursuant to this extension, the Poplin Entries

would have to be liquidated by July 30, 2010.

Plaintiff takes issue with Customs' verification procedure leading up to this second

liquidation extension and the investigation that followed.[19] In particular, plaintiff argues that

"Customs' 23 month delay in issuing the [Request for Information] on June 18, 2009 [for the

Poplin Entries] necessitated the need, in light of the various 30-day time restraints for NAFTA

verification under the Customs Regulations, for Customs to extend the liquidations of [the Poplin

Entries]." Pl.'s Resp. Br. 7. Plaintiff also seems to argue that events that took place, or did not take

place, after the second extension demonstrated that the decision to extend liquidation was

unreasonable. Pl.'s Resp. Br. 8.

The Government responds that, as with the first extension, plaintiff has failed to satisfy its

burden of proof because it has not "introduce[d] evidence . . . showing very significant periods in

which the agency took *no action* regarding its investigation." Def.'s Br. 13 (emphasis added). For

the Government, this claimed failure of proof defeats plaintiff's case. Moreover, the defendant

again asserts that plaintiff, by presenting no evidence, is impermissibly trying to shift the burden

of proof onto the Government. Defendant argues that "[n]othing in International Fidelity's

submission refutes either the facts provided by [Special Import Specialist Amaya] or the legal

determination that the court should find necessarily follow[s] from those facts." Def.'s Br. 7. In

---

[19]      Plaintiff maintains that there were three extensions. According to the Defendant's
Responses to Plaintiff's Requests for Admission, however, although Customs issued three
extension notices to plaintiff, the liquidation period was only extended twice, as the goods were
liquidated during the second extension period. *See* Def.'s Resp. Pl.'s Req. Admis. No. 9; Compl.
¶ 28.

other words, according to defendant, International Fidelity "fails to provide a basis for the Court to find, as a matter of law, that the timing of the NAFTA verifications relating to any of the entries at issue here" was "unreasonable" and that the Government has offered sworn testimony that it behaved reasonably. Def.'s Reply Br. 9, 10 ("[W]hile [plaintiff] 'submits' that it has shown 'very significant time periods in which Customs took no action regarding its investigations,' all that [plaintiff] has actually done is compile a bunch of dates, without context.").

The Government points to record evidence that, it claims, establishes that, because of the extensive variety and quantity of the fabrics involved, the verification and liquidation process required additional time to ensure accuracy. *See* Def.'s Br. 7. As with the first extension, the Government argues that because Customs does not initiate verification procedures on an entry-by-entry basis, it is reasonable that some Family Warehouse entries were not acted on immediately, since they would presumably receive the same NAFTA treatment as other entries involving the same fabric, producer, and importer which were already undergoing a NAFTA verification. *See* Def.'s Br. 7; Amaya Decl. ¶¶ 8, 14-15.

In making its case, the Government points out that the first verification letters for the thirty-three entries were mailed in January 2008, just before the first notice of extension. The Government also notes that because the responses to Customs' letters answered some questions but prompted others, more inquiries were sent and the last response on the record was received on September 21, 2009. *See* Amaya Decl. ¶ 10 ("[S]ubsequent corrections and additions were required to the [January 2008-September 2008] verifications."); Oct. 20, 2009 Notice of Action.

As with the first extension, it cannot be said that Customs abused its discretion by issuing the second notice of extension. Following February 2, 2008, when Customs extended the liquidation period for the first time, substantial activity took place. The first verification letter was

sent in January 2008, and following its first extension, Customs commenced several subsequent verifications of the importer's claims for NAFTA treatment. *See* Amaya Decl. ¶¶ 10-13, 15-16. During this time, Customs sent Requests for Information and Notices of Action between the months of January 2008 and September 2008, on October 7, 2008, December 1, 2008, December 31, 2008, and February 2, 2009—all before Customs' decision to grant the second extension for the Poketin Entries on April 11, 2009.

Moreover, on April 11, 2009, and July 25, 2009, when it extended liquidation a second time, Customs was aware that it had not yet commenced its procedures leading to the proper classification of the fabrics. As defendant points out, once NAFTA determinations were sent to Exportadora Deisy on February 2, 2009 (for the Poketin Entries) and October 20, 2009 (for the Poplin Entries), efforts to decide classification issues were commenced. Def.'s Reply Br. 8 n.3; Amaya Decl. ¶¶ 22-23 ("While the completion of a NAFTA verification will resolve the question of preferential treatment under NAFTA, additional information may still be required before an entry can be liquidated. . . . Several of the Family Warehouse entries involved tariff subheadings . . . that were not consistent with the invoice descriptions of the imported goods.").

For the Poketin Entries, this process began with a Request for Information sent to Family Warehouse on June 17, 2009, asking for additional invoice information for the fabric. The investigation ended when Customs received no response and sent its September 23, 2009 Notice of Action informing Family Warehouse of the classification change. For the Poplin Entries, although the record is unclear about Customs' investigation, Customs ultimately determined— following its October 20, 2009 denial of NAFTA treatment—that the fabric would be classified as poplin unbleached woven fabric 100 percent cotton, as evidenced by its May 25, 2010 Notice of Action. Finally, the Poketin Entries were liquidated on June 18 and July 16, 2010, and the Poplin

entries were both liquidated on June 18, 2010. In each case, liquidation occurred before the expiration of the second extension.[20]

According to plaintiff, the seven-month delay between Customs' first negative NAFTA determination for the Poplin Entries on October 20, 2009, and its final denial of NAFTA treatment on May 25, 2010, was unreasonable. Pl.'s Br. 12. Additionally, plaintiff maintains that Customs should not have waited four months after the final denial of NAFTA treatment for the Poketin Entries to issue a Request for Information concerning classification. Pl.'s Resp. Br. 8. Finally, plaintiff argues that the additional nine months (from September 23, 2009 to June 18 and July 16, 2010) Customs took to liquidate the Poketin Entries after determining classification was unreasonable. *See* Pl.'s Resp. Br. 8. Any events subsequent to the issuance of the second notice of extension on April 11 and July 25, 2009, are, of course, irrelevant to the question of whether Customs' decision was reasonable when made. Even if they could be said to be relevant, however, these facts would not help plaintiff's case.

Following the closing of the NAFTA verifications, as was Customs' practice, a reexamination was conducted to insure that nothing had fallen through the cracks. Senior Import Specialist Amaya's testimony shows that it was after this reexamination of the Family Warehouse entries in June 2009 that Customs commenced verification procedures for the subject Poplin Entries. This late beginning for the verification of the Poplin Entries resulted from the entries having been overlooked in Customs' earlier procedures. In other words, the entries were not "covered" by any of the earlier NAFTA verifications. *See* Amaya Decl. ¶¶ 14-15.

---

[20]     The period of time between the final decision on classification and liquidation does appear to be quite long; however, the reasonableness of the delay has no bearing on whether the decision to extend liquidations for a second time on April 11, 2009, was an abuse of discretion at the time it was made. *See St. Paul*, 6 F.3d at 770.

Once Customs realized in June 2009 that no verification procedure had been initiated for entries of unbleached poplin woven fabric produced by Textiles Raamsa (including the Poplin Entries), it promptly sent a Request for Information on June 18, 2009, and a follow-up Notice of Action on July 21, 2009. Customs apparently decided that it would need more than nine days to await any response from the exporter, and therefore, on July 25, 2009, reasonably determined that it should extend the Poplin Entries' liquidation period for a second time.

In fact, following these notices of extension, an additional Notice of Action was sent on October 20, 2009, for the Poplin Entries. Indeed, Customs received a response from the exporter as late as September 21, 2009, two months *after* the liquidation period for the Poplin Entries was extended a second time. *See* Oct. 20, 2009 Notice of Action. Moreover, after denying NAFTA treatment on February 2, 2009 for the Poketin Entries and October 20, 2009 for the Poplin Entries, because it now mattered that the fabrics be correctly classified, Customs began to collect information to properly classify the entries. Therefore, it is evident that Customs was not idle after the second extension was made. That is, while it might be argued that Customs should have realized that the Poplin entries had not been the subject of verification, the delay in commencing the verification did not result from inaction.

Here, the facts are different from those found in *Ford*. *Ford* involved an ongoing fraud investigation arising from eleven entries of foreign engines and transmissions. *Ford IV*, 286 F.3d at 1337. In *Ford*, the investigation spanned from August 1986 to March 1990, during which time the liquidation period was extended for thirty-six months following the lapse of the initial one-year deadline. *Id.* at 1341-42. The goods were liquidated in December 1989. *Id.* at 1342. As to the investigation, the Federal Circuit noted that "the first 30 months of the 44-month investigation . . . saw almost no substantive work and two periods of inactivity totaling 22 months . . . ." *Id.* at 1343.

Moreover, in *Ford*, the record established that Customs agents were aware that they needed information to properly appraise and classify the merchandise, and yet waited years before requesting it. *Ford II*, 157 F.3d at 856 ("Although [the] evidence shows that [the Customs agent] felt he needed more information, it also raises the question of why three years had passed without even a request to Ford for that information. Indeed, the record does not show that [the agent] ever requested more documents . . . ."). Here, the facts are distinguishable from *Ford* as the Government has demonstrated there was continual, if not consistent, activity relating to NAFTA treatment for the entries and their classification. The facts also show that Customs tried to obtain information from new sources after previous requests went unanswered.

The defendant, then, has presented record evidence that, at the time the decision was made to issue each of the notices of extension, Customs was reasonable in its conclusion that more time would be needed to obtain information "for the proper appraisement or classification of the imported . . . merchandise" contained in the four entries. 19 U.S.C. § 1504(b)(1). Plaintiff, on the other hand, has produced evidence tending to prove just two things: (1) that Customs extended the time for liquidation twice;[21] and (2) that the time between entry and liquidation was 1,054 days for the Poplin Entries; 1,053 days for Poketin Entry '17-1; and 1,081 days for Poketin Entry '18-9. What plaintiff has not pointed to is any evidence that Customs abused its discretion not acting with reasonable dispatch to complete the many tasks it had before it during the periods between the

---

[21]     As discussed briefly above, while plaintiff maintains the liquidation period was extended three times—on (1) February 2, 2008; (2) April 11 and July 25, 2009; and (3) April 10, 2010—defendant notes that these were the dates on which Customs issued notices of extension and because the entries at issue here were all liquidated within the second liquidation extension period, the third notice of extension is irrelevant. *See* Def.'s Reply Br. 3 n.2 ("Notice and extension dates are not the same—notice always precedes extension. Here, although three extension notices were issued for each entry, those notices turned out to be unnecessary as all of the entries were liquidated before the end of the extension period heralded by the second notices."); Def.'s Resp. Pl.'s Req. for Admis. No. 9.

fabrics' entry and the issuance of Requests for Information and Notices of Action to further its

investigation. *See Ford II*, 157 F.3d at 855 ("[I]n the face of evidence by Customs of its customary

practices, the burden of persuasion require[s] the importer to introduce affirmative evidence that

Customs had not followed the customary practice . . . ." (citing *St. Paul*, 6 F.3d 769-70)).

Therefore, the court cannot find that the periods between should be characterized as "inactive,"

and therefore, it cannot be said that Customs' NAFTA verification and classification procedure

timeframe was unreasonable.

Plaintiff attempts to bolster its claim by suggesting that the regulations pertaining to

NAFTA verifications demand a shorter timeframe than those for the submission of cost data (as

Customs required in *St. Paul*). Pl.'s Resp. Br. 6 ("In this case rather, there are short consecutive

thirty (30) day procedural deadlines proscribed by the Customs Regulations pertaining to NAFTA

verifications. Unlike the lengthy six (6) month actual cost data requirement in *St. Paul Fire* or the

delays associated with other agencies (*e.g.* antidumping investigation conducted by the

Department of Commerce) the Customs Regulations pertaining to NAFTA verifications allow for

Customs to solely control the NAFTA verification within the bounds of a tight timeframe.").

Plaintiff, however, mischaracterizes the thirty-day periods cited in the NAFTA regulations as

"deadlines" instead of the minimum amount of time that must expire before action may be taken.

For example, 19 C.F.R. § 181.72(d)(1) provides "[i]f the exporter or producer . . . fails to respond

to a verification letter or questionnaire . . . within 30 calendar days from the date on which the

letter or questionnaire was sent, or such longer period as may be specified in the letter or

questionnaire, Customs shall send a follow-up verification letter or questionnaire to that exporter

or producer." As defendant points out, while the regulations relating to NAFTA verifications

describe how Customs must act following the expiration of the thirty-day period, they do not

prescribe a period during which Customs must act—only the verification letter's recipient. Indeed, it is to the importer's benefit for Customs to await NAFTA responses, and hence, the regulations specifically allow multiple opportunities for exporters or producers to respond. Amaya Decl. ¶ 17. Accordingly, although Customs may act after the thirty-day period has passed, it is not mandated to do so. *See, e.g.*, 19 C.F.R. §§ 181.71-.76.

Accordingly, plaintiff's argument that the length of time that expired between entry and liquidation proved that defendant abused its discretion when extending the time for liquidation is without merit.

    *ii.*    *Customs Did Not Have Actual Knowledge That It Would Receive No Response*

International Fidelity also contends that it has satisfied its burden of demonstrating that Customs acted unlawfully, at least with regard to the Poplin Entries, by citing evidence that Customs "*knew* that [Textiles Raamsa] would not substantiate that its goods qualified for NAFTA treatment . . . ." Pl.'s Br. 12 (emphasis added). Therefore, plaintiff maintains that Customs abused its discretion by extending the liquidation period a second time. Pl.'s Br. 11-12. To support this claim, International Fidelity points to a 2008 NAFTA determination involving Family Warehouse that it maintains should have alerted Customs that "it would not receive a response to its NAFTA verification inquiries from Textiles Raamsa." Pl.'s Resp. Br. 4.

The determination plaintiff refers to concerned an entry of razo bleached woven fabric not involved in this action[22] (the "Razo Bleached Entry"). During the course of the verification proceedings for that entry, Customs sent a Request for Information to Mexican exporter, Exportadora Deisy, seeking to establish the origin of the fabric. Amaya Decl. ¶ 11. On August 27,

---

[22]    Entry number 726-1320047-5.

2008, Exportadora Deisy informed Customs that it had inaccurately identified the producer of the Razo Bleached Entry and the actual producer was Textiles Raamsa (the producer of the Poplin Entries at issue here). As a result, on October 7, 2008, Customs sent a Request for Information to producer Textiles Raamsa concerning the Razo Bleached Entry. Amaya Decl. ¶ 11. Textiles Raamsa, however, failed to respond to that request. Ultimately, after receiving nothing from Textiles Raamsa concerning the origin of the Razo Bleached Entry, Customs denied duty-free treatment and liquidated the entry on July 17, 2009. Def.'s Resp. Statement ¶ 7.

International Fidelity argues that, because the Poplin Entries shared the same manufacturer, exporter, and importer as the Razo Bleached Entry, Customs knew that no information would be forthcoming regarding the origin of the Poplin Entries. Pl.'s Br. 12. In other words, plaintiff argues once Customs denied duty-free treatment for the Razo Bleached Entry based on Textiles Raamsa's failure to respond, it knew that these same parties would not respond to verification requests in relation to the Poplin Entries at issue here. For plaintiff, because Customs "knew or should have known" that producer Textiles Raamsa's behavior in the Razo Bleached Entry investigation would be replicated in other verification requests Customs had no "reasonable basis" to extend the liquidation period a second time, and should have initiated a verification proceeding for the Poplin Entries sooner. Pl.'s Resp. Br. 5 ("Had Customs initiated its NAFTA verification review for [the Poplin Entries] on or about December 1, 2008, the time it knew or should have known that information from Textiles Raamsa would not be forthcoming, Customs would not have needed to extend the liquidations of these two (2) entries a second time."); Pl.'s Resp. Br. 11 ("Customs had prior actual knowledge involving another entry . . . that the information it requested with respect to [the Poplin Entries] would not be provided.").

The Government maintains that there is a "high bar against challenges to extensions of liquidations under Section 1504(b)," which "cannot be overcome by merely asserting that there were no response[s] to requests for information" in an unrelated proceeding. Def.'s Br. 9, 11. According to defendant, in order for it to be found to have actual knowledge, plaintiff "would have to demonstrate that Customs was notified that the information requested in the NAFTA verifications would not be submitted" in order to prevail. Def.'s Br. 11. In other words, for the Government, International Fidelity would have to show that Customs had actual knowledge that the requested origin information would not be submitted.

The Government further contends that its negative NAFTA determination in this case was "based on a lack of verifying information, not on 'actual knowledge' that no response would ever arrive." Def.'s Reply Br. 6. That is, the government insists that Customs' decision to deny duty-free treatment did not result from it being "'actually' advised that Textiles Raamsa would not be responding to the agency's inquiries regarding [the Razo Bleached Entry,]" but rather, because Textiles Raamsa's failure to respond resulted in the claims not being substantiated within the required timeframe. Def.'s Reply Br. 6. Accordingly, for the Government, "[g]iven that Customs did not even possess 'actual knowledge' that its request for information would never have been answered regarding [the Razo Bleached Entry], it would be impossible for Customs to have 'actual knowledge' that similar information would not be provided for other entries." Def.'s Reply Br. 6.

In addition, the Government emphasizes that under plaintiff's knowledge theory, Customs would be forced to speculate about whether verifying information would be forthcoming. Def.'s Br. 11-12 ("Although the lack of a response with regard to inquiries made for one entry may increase the possibility of no responses for inquiries made for other entries, it does not rise to the level of actual knowledge by Customs that no information would be forthcoming for the four

entries in this case."). For defendant, if plaintiff's argument were to be credited, it would create "a new obligation for Customs," one not considered by the Federal Circuit in *St. Paul*, that would "require the agency to speculate as to a party's intent to respond to a Customs request for information." Def.'s Br. 12. Therefore, the Government maintains that, absent specific facts establishing Customs knew the information would not be provided—which defendant maintains are lacking here— Customs cannot be found to have abused its discretion in issuing a second notice of extension to await the requested information. Def.'s Br. 11-12.

The court finds that plaintiff has not shown that the second extension was an abuse of discretion based on Customs' knowledge that Exportadora Deisy and Family Warehouse would not respond to its inquiries. First, International Fidelity offers no record evidence that Customs had actual knowledge that Textiles Raamsa would not submit the requested origin information prior to granting the extension. *See St. Paul*, 6 F.3d at 769 ("[Plaintiff has] to prove that [the importer] or someone else, notified Customs that the required [information] would *not* be submitted." (emphasis in original)). Rather, International Fidelity simply claims that Customs could be found to have actual knowledge, based on the Razo Bleached Entry investigation, that Textiles Raamsa would not submit any information. An exporter or producer's failure to respond to one verification request, however, simply does not provide actual knowledge that it will not respond to another.

Nor could it be said that the failure to respond to a verification request established a pattern from which Customs could be charged with knowledge that it would not receive responses to its inquiries. Although the Razo Bleached Entry and the Poplin Entries shared the same importer, exporter, and manufacturer, the entries did not involve the same fabric. Textiles Raamsa's failure to produce substantiating evidence regarding the origin of the Razo Bleached Entry in no way

confirmed that it would similarly fail to substantiate a NAFTA claim for the Poplin Entries.

Importantly, Customs has "*no duty to inquire whether the required information will be*

*forthcomin*g, and Customs may employ the full four-year period unless it has actual knowledge

that the required information will not be submitted." *St. Paul*, 6 F.3d at 770 (emphasis added).

        Without knowing why Textiles Raamsa failed to respond in the one instance, it is not

possible to charge Customs with knowledge of what the producer might do in another case.

Therefore, although Customs could have speculated that Textiles Raamsa would not submit the

requested information based on prior behavior, plaintiff has not shown that Customs had actual

knowledge that its inquiries would not gain a response. *See St. Paul*, 6 F.3d at 770. Even if

plaintiff's proposed "should have known" standard were the law (and plaintiff has cited no case

indicating that it is), International Fidelity's arguments would fail under these facts. That is,

plaintiff has simply not shown, by the one instance cited, that Customs could be charged with

knowledge that its queries would be met with silence.


                                   **CONCLUSION**

        The court finds that Customs did not abuse its discretion by issuing either the first or second

notice of extension because, even six months after the subject merchandise's entry, Customs was

aware that it would not be able to make proper NAFTA verifications and classification

determinations and liquidate the subject merchandise before the expiration of the initial one-year

liquidation period. *See* 19 U.S.C. § 1504(a)(1). It is apparent that Customs was seeking

"information needed for the proper appraisement or classification of the imported . . .

merchandise" and did not abuse its discretion in doing so. 19 U.S.C. § 1504(b)(1). In addition, the

court finds that Customs' second liquidation extension was not an abuse of discretion because

Customs determined it was more efficient to accumulate Family Warehouse's entries for purposes

of NAFTA verification and to resolve any questions regarding NAFTA treatment prior to settling

classification issues. Importantly, plaintiff has not shown that Customs issued these extensions

following the "elimination of all possible grounds" for their issuance. *St. Paul*, 6 F.3d at 768. Thus,

plaintiff has not met its burden to bring this case within the "narrow limitation" imposed on

Customs' discretion to extend the liquidation period. *See id.*

Finally, as to the time it took Customs to liquidate following the second extension, the court

notes that liquidation occurred after Customs' decision to extend the liquidation period, and

therefore, is not relevant to the question of whether Customs abused its discretion in deciding to

extend the liquidation period for the subject merchandise.

Thus, for the reasons stated above, plaintiff's motion for summary judgment is denied, and

the defendant's cross-motion for summary judgment is granted. Judgment will be entered

accordingly.

Dated:        May 30, 2017
              New York, New York

                                                    _____/s/ Richard K. Eaton_____
                                                         Richard K. Eaton, Judge